UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DANIELLE JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action 1:25-cv-5978 (ALC) |
| | § | |
| GRAPHITE SOLUTIONS INC. | § | |
| | § | |
| Defendant. | § | |
| | § | |

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT - THIRD-PARTY

BENEFICIARY ENFORCEMENT AND MISCLASSIFICATION

Plaintiff Danielle Johnson ("Plaintiff"), proceeding pro se, brings this action

against Graphite Solutions Inc. ("Graphite" or "Defendant") for breach of contract, third-

party beneficiary enforcement, fraudulent misrepresentation, misclassification under

Georgia labor law, and related retaliatory conduct.

Plaintiff was contracted to Walmart Inc. through Graphite under a fixed-term

agreement, earning $90/hour for 40 hours per week, with an expected total contract value

of $188,000 through January 31, 2025. Despite documented strong performance and

formal renewal, Plaintiff was abruptly terminated on April 12, 2024, without cause and

without the contractually required 30-day notice.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT - THIRD-PARTY
BENEFICIARY ENFORCEMENT AND MISCLASSIFICATION – Johnson v. Graphite –1

As of the date of termination, $152,900 remained unpaid under the active agreement. This Complaint seeks damages arising from Defendant's breach of contract, unlawful misclassification, and post-termination interference with Plaintiff's legal and economic rights.

Table of Contents

I.    JURISDICTION AND VENUE ..................................................................... 4

II. PARTIES.......................................................................................................... 4

III. STATEMENT OF FACTS ............................................................................. 5

IV. CAUSES OF ACTION .................................................................................. 7

   COUNT ONE – Breach of Contract ................................................................ 7

   COUNT TWO – Third-Party Beneficiary Enforcement of the MSA ............. 7

   COUNT THREE – Breach of Covenant of Good Faith and Fair Dealing ...... 9

   COUNT FOUR – Fraudulent Misrepresentation ........................................... 10

   COUNT FIVE – Misclassification in Violation of Georgia Labor Law ....... 11

      Labor Classification Analysis Table......................................................... 12

VI. PRAYER FOR RELIEF ............................................................................... 14

   A. Compensatory Damages............................................................................ 14

   B. Equitable and Declaratory Relief ............................................................. 15

      C. Statutory and Restitutionary Relief (as to Count Five – Misclassification) ......... 15

      D. Additional Relief ................................................................................... 15

VI. EXHIBITS .................................................................................................... 16

In support of this Complaint, Plaintiff states as follows:

I.    JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

2.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 and Graphite Solutions Inc.'s Terms of Use, which require that all claims and legal proceedings be brought solely in the state or federal courts of New York County, New York. Defendant has contractually consented to jurisdiction and venue in this Court and has waived any objection based on forum non conveniens.

II. PARTIES

3.  Graphite Solutions Inc. is a staffing and workforce solutions company that specializes in placing technology and business professionals with enterprise clients through third-party contracting arrangements, including large corporations like Walmart Inc. Graphite operates as the intermediary between consultants and enterprise clients, issuing agreements, administering compensation, and controlling contract terms.

4.  Plaintiff Danielle Johnson is an independent consultant doing business as the sole member of DreamVentor, LLC, residing in and formed in Atlanta, Georgia.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT - THIRD-PARTY
BENEFICIARY ENFORCEMENT AND MISCLASSIFICATION – Johnson v. Graphite –4

## III. STATEMENT OF FACTS

LABOR CLASSIFICATION ANALYSIS UNDER GEORGIA LAW

5. In July 2023, Plaintiff was retained as a contract consultant for Walmart Inc. under a consulting arrangement facilitated through Graphite Solutions Inc, to end on January 31, 2024 in alignment with Walmart's fiscal year ending.

6. Plaintiff was named as the Consultant of Record under a Statement of Work (SOW) governed by a Master Services Agreement (MSA) between Walmart Inc. and Graphite, Plaintiff was asked to approve the contract terms by Walmart and informed by Graphite that the terms had been signed and put in place prior to her start date and as a prerequisite for her start date (see Exhibits 2 and 3). Walmart directly solicited Plaintiff's agreement to contract terms as a prerequisite to her onboarding, emphasizing her critical role under the SOW and further confirming her reliance and protected status as an intended third-party beneficiary (see Exhibit 20).

7.  From December 2023 – January 2024, Plaintiff was informed by Walmart that the contract would be extended for a one-year term from February 1, 2024 through January 31, 2025, as a result of her performance and contribution to date (see Exhibits 5 and 10).

8. Plaintiff was required by Graphite to e-sign a formal renewal agreement, which clearly defined the contract length, pay rate.

9. On April 12, 2024, Plaintiff was abruptly terminated without the required 30-day notice and without cause, violating the terms of the executed agreement. Plaintiff

subsequently invoiced for April 15–26 but was ignored or denied by both Graphite and Walmart (see Exhibit 11).

10. Plaintiff was advised by Walmart that they were seeking to hire someone with a 'lower skillset,' despite praising Plaintiff's performance and confirming Plaintiff had not violated any work expectations (see Exhibits 6 and 10).

11. Defendant failed to enforce or honor the agreed-upon contract terms and failed to secure the 30-day notice payment or notification period, despite its role as the contracting intermediary.

12. When Plaintiff sought compensation for the breach, Defendant issued retaliatory statements, threatening her professional prospects and told her she'd be sued for tortious interference if she wrote any poor reviews of the company online or reminded Walmart of their contractual obligation to honor the notice period. Plaintiff was also locked out of Graphite's platform immediately after asserting her rights (see Exhibit 1).

13. Defendant's actions have resulted in Plaintiff being denied approximately $153,230 in income for the remainder of the contract period, excluding benefits and lost opportunities. Even after termination, Plaintiff's profile in the Graphite platform continued to reflect the full contract value as unpaid, demonstrating Defendant's internal recognition of the contract's active and enforceable status (see Exhibit 22).

IV. CAUSES OF ACTION

COUNT I – Breach of Contract

14. Plaintiff and Defendant entered into a valid, binding employment agreement by e-signature, outlining compensation and duration. Plaintiff signed a formal contract extension with Graphite that defined the project role, compensation rate of $90/hour, and the duration from February 1, 2024, to January 31, 2025, contradicting all post-hoc claims of at-will status (see Exhibit 23).

15. Plaintiff fully performed her obligations under the agreement.

16. Defendant materially breached the agreement by failing to enforce the 30-day termination notice clause and by failing to compensate Plaintiff for the remaining term.

17. Plaintiff has suffered monetary damages in excess of $150,000.

18. At the time of her termination, Plaintiff's profile in the Graphite platform continued to reflect the full unpaid balance of the renewed contract, further demonstrating that Graphite internally acknowledged the active contract through January 2025 (see Exhibit 19).

COUNT II – Third-Party Beneficiary Enforcement of the MSA

19. Plaintiff was the intended third-party beneficiary of the Master Services Agreement ("MSA") and Statement of Work ("SOW") executed between Graphite and Walmart Inc. Her name appears on the SOW as the designated consultant, and she was asked by Walmart to review and approve both the MSA

and SOW as a condition of her engagement. Plaintiff reasonably relied on these representations in agreeing to perform under the contract.

20. Graphite further confirmed Plaintiff's beneficiary status by facilitating her onboarding, controlling payment through its platform, and digitally requesting her acceptance of contract renewal terms. Plaintiff fully performed under the agreement until she was prematurely terminated without cause and without the required 30-day notice.

21. As a direct and intended beneficiary, Plaintiff is entitled to enforce the terms of the MSA and SOW, including compensation for the remainder of the contract term. Defendant's failure to honor these obligations constitutes a breach of contract enforceable by Plaintiff under applicable law.

22. Plaintiff was a direct and identified beneficiary under the SOW executed as part of the Walmart–Graphite Master Services Agreement. Plaintiff was designated in the governing Master Services Agreement and the Statement of Work executed between Graphite and Walmart, both of which name her as the Consultant of Record and define the contractual protections she relied on (see Exhibits 12 and 13).

23. Plaintiff was asked to approve contract terms directly by Walmart and identified by name as the designated consultant in Walmart's systems and communications, confirming her standing as a third-party beneficiary under the Master Services Agreement (see Exhibits 4, 12, 13, and 18).

24. Plaintiff relied on these contractual protections and fulfilled all obligations thereunder, including confirming her alignment with the contract terms provided directly by Walmart (see Exhibit 4). Defendant's conduct constitutes a breach of third-party beneficiary protections under New York law, and Walmart's general counsel has acknowledged Plaintiff was not their employee, suggesting Graphite bore the enforcement responsibility (see Exhibits 8 and 9).

25. Plaintiff was explicitly informed by both Graphite and Walmart that her Statement of Work would be finalized and signed prior to her start date, and that she was the designated consultant for project launch. These communications confirm her identification as an intended beneficiary under the governing agreement (see Exhibit 21).

26. Defendant failed to fulfill its obligations under the MSA and SOW by terminating Plaintiff prematurely without lawful cause or contractually required notice.

27. Defendant's conduct constitutes a breach of third-party beneficiary protections under New York law.

COUNT III – Breach of Covenant of Good Faith and Fair Dealing

28. Defendant owed Plaintiff a duty of good faith and fair dealing under the executed agreement and business relationship.

29. Defendant's abrupt termination of Plaintiff, refusal to enforce contractual provisions, and subsequent retaliatory behavior constitute a breach of this covenant.

30. As a result, Plaintiff has suffered financial, professional, and reputational harm.

COUNT IV – Fraudulent Misrepresentation

31. Plaintiff was falsely informed by Defendant, after the contract breach, that she was an 'at-will employee' and therefore had no legal right to enforce the signed agreement or claim payment under the renewal terms.

32. This assertion directly contradicts the written contract Plaintiff signed, which provided for a fixed duration, specified compensation, and a clear 30-day termination notice requirement. Defendant's claim that Plaintiff was an at-will employee is further contradicted by the executed agreements and extension confirmations (see Exhibits 2, 3, 10, and 16)

33. Defendant's misrepresentation was intentional and aimed at avoiding its legal obligations and suppressing Plaintiff's right to pursue contractual remedies.

34. Plaintiff reasonably relied on the contract and has suffered economic loss and reputational damage as a result of this fraudulent misrepresentation.

35. After breaching the contract, Defendant threatened Plaintiff with tortious interference claims to deter her from publicly addressing the misconduct or contacting Walmart about their obligations (see Exhibit 17).

36. Under New York law, when a party breaches a fixed-term employment contract without lawful justification, the non-breaching party is entitled to the full amount of compensation due under the contract. See. Cornell v. T.V. Dev. Corp., 17 N.Y.2d 69, 75 (1966) ('The established rule is that recovery may be had for the

full value of the contract unless the employer sustains the burden of showing a legal justification for the discharge.').

COUNT V – Misclassification in Violation of Georgia Labor Law

37. Plaintiff performed her work as a consultant in Atlanta, Georgia, under a contract administered and facilitated by Defendant Graphite Solutions Inc.

38. Although labeled and paid as an independent contractor, Plaintiff was subject to oversight, direction, and approval mechanisms consistent with an employer-employee relationship.

39. Plaintiff was paid on an hourly basis, required to track time, assigned specific ongoing responsibilities, and integrated into Walmart's internal systems and communications—facts which align with employee status under Georgia law. Defendant also mandated Plaintiff maintain 9–5 hours and instructed her to prioritize Walmart-related work above other client obligations (see Exhibit 14).

40. Under O.C.G.A. § 34-8-35(f), Georgia law evaluates employee status based on the degree of control, integration into the employer's business, and economic dependence. Plaintiff meets these criteria and was therefore misclassified.

41. As a result of this misclassification, Defendant unlawfully denied Plaintiff the rights and protections afforded to employees, including but not limited to job security, contract enforcement, and proper tax treatment. Defendant further used the misclassification to avoid legal obligations under the signed renewal agreement and to suppress Plaintiff's ability to recover damages.

42. Plaintiff seeks restitution for misclassification, including improperly withheld compensation, statutory damages, and other relief under Georgia law.

43. Although this matter is filed in the Southern District of New York pursuant to Defendant's venue clause, Plaintiff's services were performed in Georgia, and Georgia labor law governs employment classification.

Labor Classification Analysis Table

| Factor | Evidence from Record | Supports Employee Status? |
|---|---|---|
| Control over hours and schedule | Email instructed Plaintiff to work "40 hours/week, 9–5 CDT" and to prioritize Walmart's work over other clients. (Exhibit 14) | Yes |
| Integration into business operations | Plaintiff performed core project strategy functions for Walmart, integrated into team workflows and Slack. | Yes |
| Method of payment (hourly vs. per project) | Paid a fixed hourly rate ($90/hour), not a lump sum per deliverable. (Exhibit 23) | Yes |
| Exclusivity or priority of work | Graphite told Plaintiff to prioritize Walmart work over any other engagements. (Exhibit 14) | Yes |
| Provision of tools and direction | Plaintiff followed corporate Slack protocols, communication chains, and client-managed deliverables. | Yes |
| Right to terminate at will | Contract required 30-day notice, not immediate termination—indicating employee-style protections. | Yes |
| Length of relationship and project continuity | Plaintiff's contract was renewed for a 12-month term following a 6-month initial engagement. The job description (Exhibit 7) outlines a long-term, ongoing operational role, not a discrete or short-term project. Graphite's internal communications (Exhibit 5) further confirm Walmart's plan to extend Plaintiff's contract due to her performance. | Yes |

| Location of work and supervision | Remote but directed daily by Walmart leadership and operations leads. | Yes |
|---|---|---|

COUNT SIX – Tortious Interference with Economic Relations

44. Plaintiff was performing services under a valid, renewed consulting agreement between Graphite and Walmart, which was communicated to Plaintiff in December 2023 and formally acknowledged by both parties in writing. The agreement extended her work through January 31, 2025, based on merit and performance (see Exhibit 5).

45. Plaintiff was informed by both Walmart and Graphite that the contract was fully processed and executed as a prerequisite to continuing her role (see Exhibits 2 and 3).

46. On or about April 12, 2024, Defendant abruptly terminated Plaintiff without cause or proper notice, despite acknowledging that Plaintiff had not breached the contract or violated any expectations (see Exhibit 1 and Exhibit 6).

47. Subsequently, Plaintiff learned that her Statement of Work (SOW) had been repurposed and assigned to a different individual, despite the prior confirmation that the renewal was due to her performance (see Exhibit 6).

48. These actions constitute unlawful interference with Plaintiff's economic relationship and expectancy in violation of Georgia common law, which protects against improper interference by a third party with a valid contractual or business relationship. Defendant confirmed Plaintiff's contract extension and subsequently

reassigned the scope of work to a lower-cost individual, despite having acknowledged her performance and active contract status (see Exhibits 6 and 10).

49. Defendant's actions were intentional, unjustified, and malicious, directly causing Plaintiff to lose approximately $153,230 in income and suffer reputational and professional harm.

50. Plaintiff seeks compensatory damages, punitive damages, and injunctive relief as appropriate under Georgia law.

V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant the following relief:

A. Compensatory Damages

a. An award of damages in the amount of $153,230 for breach of contract and lost compensation through January 31, 2025;

b. Consequential and incidental damages in an amount to be determined at trial;

c. Pre- and post-judgment interest as allowed by law, including interest accrued from the date of breach in April 2024;

B. Equitable and Declaratory Relief

d. A declaration that Plaintiff was an intended third-party beneficiary under the Master Services Agreement between Graphite Solutions Inc. and Walmart Inc.;

e. A declaration that Plaintiff was misclassified as an independent contractor and is entitled to the rights and protections of an employee under Georgia law;

f. Reformation of the agreement or other equitable relief to remedy the misclassification and reflect Plaintiff's employment status;

C. Statutory and Restitutionary Relief (as to Count Five – Misclassification)

g. Restitution for improperly withheld compensation, including unpaid benefits and amounts improperly deducted due to misclassification;

h. Reimbursement for employer-side payroll taxes and contributions wrongfully shifted to Plaintiff;

i. Statutory penalties under applicable Georgia labor laws (O.C.G.A. § 34-8-35(f)) and related state or federal statutes;

D. Additional Relief

j. Compensatory and punitive damages as warranted under Georgia law for Defendant's tortious interference and fraudulent misrepresentation;

k. Costs of suit and reasonable attorneys' fees if permitted under applicable law;

l. Such other and further relief as the Court deems just and proper.

VI. EXHIBITS

| Exhibit # | Description | File Name |
|---|---|---|
| 1 | Screenshot showing Plaintiff was blocked from platform after requesting payment | Blocked from Login.pdf |
| 2 | Confirmation from Graphite that Walmart contract was fully executed prior to onboarding | Contract has been fully processed and signed.pdf |
| 3 | Graphite confirming the contract execution process with Plaintiff | Contract processing email discussion with Graphite.pdf |
| 4 | Email exchange with Walmart (Emilee Miles) gaining Plaintiff's agreement to terms | Contract Production Discussions with Walmart - Emilee Miles Manager.pdf |
| 5 | Internal communication showing Walmart planned renewal based on positive performance | Contract renewal discussions with consultants.pdf |
| 6 | Confirmation from Graphite that Plaintiff was not terminated for cause and that SOW was repurposed | Confirmation from Graphite that Plaintiff Did Not Breach and was thanked for her work.pdf |
| 7 | Notes from Graphite meeting with Walmart on the scope of the role shows integration, Plaintiff's lack of control, and specific deliverables | Digital Messaging Operations – Job Responsibility Notes from Graphite.pdf |
| 8 | Email from Walmart legal team stating Plaintiff was not a Walmart employee and deflecting blame | Email from Walmart General Counsel 1.pdf |
| 9 | Follow-up from Walmart legal (possibly with more specificity on liability or culpability) | Email from Walmart General Counsel 2.pdf |
| 10 | Graphite confirming extension for FY 2024 and praising Plaintiff's performance | Graphite Message - Walmart Contract Extension - Update.pdf |
| 11 | Plaintiff's invoice sent to Graphite and Walmart for unpaid April 15–26 services under 30-day clause | Graphite Invoice - April 15 thru 26th.pdf |

| 12 | The Walmart–Graphite Master Services Agreement governing all SOWs | Graphite Solutions, Inc. MSA -DRAFT. pdf |
|---|---|---|
| 13 | Statement of Work (SOW) designating Plaintiff as Consultant of Record with defined tasks and scope | Graphite Solutions, Inc. SOW 2 - Daneille Johnson |
| 14 | Internal message instructing Plaintiff to prioritize Walmart work and maintain 9–5 schedule | Graphite told Plaintiff to prioritize their work over others.pdf |
| 15 | Screenshot of Trust Pilot's online reviews proving low overall rating due to complaints regarding Graphite's business practices | Graphite's Poor Reviews.pdf |
| 16 | Copy of Plaintiff's initial July 2023–Jan 2024 contract | Initial Contract July 2023 - January 2024.pdf |
| 17 | Letter from Graphite's legal counsel threatening Plaintiff with tortious interference for online reviews | Letter from opposing counsel demanding no write up online.pdf |
| 18 | Graphite email confirming Plaintiff's SOW was being signed to start Walmart project | Reference to the SOW belonging to the Danielle Johnson OCR.pdf |
| 19 | Screenshot of unpaid balance for full contract visible on Graphite platform | Remaining Unpaid Contract Graphite Platform OCR.pdf |
| 20 | Signed renewal agreement confirming $90/hr rate and project through Jan 2025 | Signed Agreement - between DJohnson and Graphite_merge OCR.pdf |
| 21 | Terms from Graphite platform: 12-month duration, 40 hours/week, M–F 9–5 CDT | Terms of Contract - Graphite Platform_merge Copy OCR.pdf |
| 22 | Texts to Walmart (Emilee Miles) explaining contract obligations, non-W2 status, and breach context | Text messages to Emilee Miles - Walmart Regarding Contract Obligations OCR Copy.pdf |
| 23 | Graphite Terms of Use showing mandatory forum selection clause requiring all claims be filed in New York County, NY (federal or state court) and waiver of inconvenient forum objections | Terms of Use - SDNY Venue.pdf |
| 24 and 24a | Walmart leader tells Plaintiff that her contract is being cancelled immediately despite meeting and exceeding expectations, but now they want someone with a lower skillset and | Audio and Transcript – April 12- Contract Termination Emilee Miles – Walmart Manager |

| | | |
|---|---|---|
| | intend to repurpose the SOW to work with someone "lower" | |
| 25 and 25a | Graphite hears Plaintiff's feedback on terms | Audio and Transcript – April 15, 2024 – Discussion on Term with Graphite |
| 26 and 26a | Graphite attempts to convince Plaintiff that there's no contractual obligation and minimize/refuse to honor the MSA, SOW and Digital Agreement | Audio and Transcript – April 16, 2024 Graphite tells Plaintiff that the contracts put in place are not inclusive of her |

CALL RECORDING ADMISSIBILITY AND CONSENT OVERVIEW  Plaintiff Danielle Johnson submits that the audio recordings referenced in this Complaint were legally obtained under applicable state and federal laws. Each participant in the relevant calls was located in a one-party or mutual consent jurisdiction, and in each case either (a) Plaintiff was a party to the conversation or (b) all participants were notified that the call was being recorded. These recordings are submitted as evidence to rebut misrepresentations and document contractual denials, retaliatory behavior, and attempts to interfere with Plaintiff's legal rights.

Plaintiff has suffered economic harm, reputational damage, and emotional distress as a result of Defendant's contractual breaches, misrepresentations, and retaliatory conduct. These harms were avoidable and unjustified, and this action seeks to hold Defendant accountable for its unlawful conduct and to deter similar behavior in the future.

Respectfully submitted,

/s/ Danielle Johnson
Danielle Johnson, Pro Se Plaintiff
Email: danielle.j.johnson@gmail.com
Phone: (404) 414-7610
Filing Date: July 16, 2025



danielle johnson <danielle.j.johnson@gmail.com>

## UPS Delivery Notification, Tracking Number 1Z067Y010332624368

1 message

**UPS** <pkginfo@ups.com>                                            Tue, Jul 8, 2025 at 2:53 PM
To: DANIELLE.J.JOHNSON@gmail.com



### Hello, your package has been delivered.

**Delivery Date:**    Tuesday, 07/08/2025
**Delivery Time:**    2:52 PM
**Signed by:**    PHIL

**THE UPS STORE**

| | |
|---|---|
| **Tracking Number:** | 1Z067Y010332624368 |
| **Ship To:** | U.S. DISTRICT COURT - S.D.N.Y.<br>500 PEARL ST<br>CASHIERS ROOM 260<br>NEW YORK, NY 100071316<br>US |
| **Number of Packages:** | 1 |
| **UPS Service:** | UPS Ground |
| **Package Weight:** | 0.1 LBS |
| **Reference Number:** | PR |
| **Reference Number:** | MMZG5GZNKVHFG |

**Discover more about UPS:**

Visit www.ups.com

Sign Up For Additional E-Mail From UPS

Read Compass Online

---

© 2025 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this email. UPS will not receive any reply message.

**Review the UPS Privacy Notice**

**For Questions, Visit Our Help and Support Center**